(65 App. Div. 553.)

TRUSTEES OF UNION COLLEGE OF TOWN OF SCHENECTADY v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department.   November 22, 1901.)

1. DEEDS—CONSTRUCTION—CONDITION SUBSEQUENT—BREACH—FORFEITURE.
   A deed conveying certain premises recited that the land was to be used for the purpose of building a city hall thereon, and that the conveyance was made on the express condition that, in case such land should ever cease to be used for a city hall, it should revert back, as if the conveyance had not been made. *Held*, that the deed was on a condition subsequent, for the breach of which the estate would be forfeited.

2. SAME—BREACH OF CONDITION.
   In such case, failure of the city to begin to build the hall within 25 years was a failure to comply with the condition subsequent within a reasonable time, so as to amount to a breach thereof.

3. SAME—ACTION—FORFEITURE—PRESUMPTION.
   In an action to recover such land on the ground of such breach, where it appears that shortly after the conveyance the city proceeded, under legislative authority, to open sewers and streets, and to grade the latter, it will not be presumed that the land remained unimproved agricultural land, so as to support a contention that it was not intended that the hall should be built until the land became adapted for that purpose.

4. SAME—JUDICIAL NOTICE—MUNICIPALITY—POPULATION.
   In such an action, the court will take judicial notice of the municipality in which the land is situate, and the growth of population according to the census, on the question whether the land was so adapted.

5. SAME—ESTOPPEL TO CLAIM BREACH—TAXATION—EXEMPTION.
   The fact that the grantors failed to claim a breach and assert a right of re-entry at the expiration of a reasonable time for the commencement of building the hall would not estop them, though the land escaped taxation between the expiration of such time and the beginning of the suit, so as to deprive defendant, which had succeeded to the original grantee, of its revenues, as such immunity from taxation was due to the fact that the grantee was a municipal corporation, and not to any act or omission of the grantors subsequent to the conveyance.

6. SAME—RIGHT TO WAIVE BREACH.
   Though the grantors had a right to waive the breach, failure to assert such breach, and a right of re-entry on the expiration of such reasonable time, did not amount to an estoppel.

**7. SAME—DAMAGES—RENTAL VALUE OF PREMISES.**
  The complaint in such action alleged that the defendant was in pos-
session of the premises, or claimed to be entitled to the possession there-
of, as successor, by virtue of law, of a certain city, the grantee named
in the deed of conveyance, which allegation was not denied. *Held*, that
defendant was precluded from insisting that plaintiff had been in posses-
sion since the expiration of the reasonable time for commencing to build
the hall, so that plaintiff was entitled to recover the rental value of the
premises from the time action was begun until the time of trial.

Appeal from trial term, Queens county.

Action by the trustees of Union College of the Town of Sche-
nectady against the city of New York. From a judgment for plain-
tiffs, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS,
WOODWARD, and SEWELL, JJ.

William J. Carr, for appellant.
Percy S. Dudley, for respondents.

JENKS, J. This action was begun in October, 1898, to recover
certain land upon breach of a condition. The land was conveyed
in 1873 by the respondents to Long Island City, the predecessor of
the appellant. After the description, the deed contained this clause:

"Said plot of land is to be used by said Long Island City for the purpose
of building a city hall thereon, and this conveyance is made upon the express
condition that, in case the said plot of ground above described shall ever
cease to be used by said Long Island City for a city hall or other similar
city buildings, then, and in that case, the said plot of land shall revert back
to the parties hereto of the first part, as if this conveyance had not been
made."

At the trial it was admitted that there was no building upon the
land, and that none had ever been placed thereon. It appeared
that early in 1898 steps had been taken, as far as the approval of a
a recommendation by the board of public improvements of the de-
fendant, transmission of such approval to the board of estimate and
apportionment, and a reference by that board to one of its mem-
bers for investigation and report.

I think that the condition of the deed was subsequent. In Nicoll
v. Railroad Co., 12 N. Y. 121, 130, it was said:

"Whether a condition be one or the other (i. e. precedent or subsequent) is
a matter of construction, and depends upon the intention of the party creat-
ing the estate. 4 Kent, Comm. 124; Hotham v. East India Co., 1 Term
R. 645; Planner v. Scudamore, 2 Bos. & P. 295; Finlay v. King's Lessee, 3
Pet. 346, 7 L. Ed. 701. In the latter case, Marshall, C. J., said: 'If the act
[on which the estate depends] does not necessarily precede the vesting of the
estate, but may accompany or follow it, if this is to be collected from the
whole instrument, the condition is subsequent.'"

See, too, Underhill v. Railroad Co., 20 Barb. 455, 459; Towle v.
Remsen, 70 N. Y. 303, 311.

And, though no precise technical words are necessary to make
a condition subsequent or precedent, yet it is significant that this
conveyance is made "upon the express condition that in case the said
plot of ground shall ever cease to be used for a city hall," etc., for
the reason that, in the language of Vann, J., in Graves v. Deterling,

120 N. Y. 447, 457, 24 N. E. 655, 657, "for time out of mind conditions have usually been preceded by such words as 'proviso,' 'ita quod,' and 'sub conditione,' or their modern equivalents." In Upington v. Corrigan, 151 N. Y. 143, 45 N. E. 359, 37 L. R. A. 794, the premises were conveyed for a nominal consideration, with this habendum clause and condition: "To have and to hold * * * unto the said party of the second part, his heirs and assigns, * * * upon the condition following, to wit, that said party of the second part shall consecrate, or cause to be consecrated, said property for the purpose of erecting a church building, and shall within a reasonable time erect, or cause to be erected, such building." The court, per Gray, J., held this was a condition subsequent. Possession and domination of the land must, of necessity, accompany and precede the building of a city hall or any public building, the grant is made in præsenti, and "not to take effect upon the happening of a certain event." Nicoll v. Railroad Co., supra; 2 Washb. Real Prop. (15th Ed.) star page 445. A conveyance of property may be made for a public use, subject to a forfeiture of the title for a breach of the condition of the deed. Rose v. Hawley, 118 N. Y. 502, 23 N. E. 904; Id., 141 N. Y. 366, 36 N. E. 335; Clarke v. Inhabitants of Town of Brookfield, 81 Mo. 514, 51 Am. Rep. 243.

The deed is silent as to the time of performance, but the law will imply that performance must be within a reasonable time. Washb. Real Prop., supra, star page 450; Stuyvesant v. Mayor, etc., of City of New York, 11 Paige, 414; Hayden v. Inhabitants of Stoughton, 5 Pick. 528; Allen v. Howe, 105 Mass. 241. The neglect for 25 years was held by the court (Gaynor, J., presiding) to work a breach of the condition; so the first question presented is whether the special term was right in this determination. The city was ready to take the conveyance, whose purpose was to provide a site of a building for the city's business. Such a structure might almost be classed as a municipal need, arising at the beginning of the city's life, and not within the category of public institutions, such as libraries, parks, or public gardens, which are the marks of municipal maturity. No good reason suggests itself why it could not begin to build an administration building within 20 years of its acceptance, and no reason is suggested by the appellant for such inaction. In Stuyvesant v. Mayor, etc., of City of New York, supra, the plaintiff granted lands to the defendant in 1836, upon the condition that they should be used as a public square, and that the defendant should immediately proceed to regulate the surrounding grounds, and inclose the square with railings, and to plant and improve the inclosure. The defendant did none of these things in a period of a little less than three years, and the chancellor held that this lapse was a breach of the condition subsequent. In Hayden v. Inhabitants of Stoughton, supra, there was a devise to a town for the purpose of building a school house. In 1806 the people voted to accept the land, and then did nothing for 20 years. Putnam, J., speaking for the court, says:

"And the party entitled to have the estate upon a forfeiture is not to be bound by the mere will and pleasure of the devisees as to the time or man-

ner of performing the condition, for that would, in effect, destroy the condi-
tion. They might never perform it. The devisees are therefore to perform
in a reasonable, viz. a convenient, time,—'according to the nature of the
thing to be done.' Com. Dig. 'Conditions,' G5. * * * They have omitted
to do in that long period of time what might have been done in a month as
well as in a century. It seems to us that they have not conformed to the
manifest intention of the testator. They have forfeited the estate."

In Upington v. Corrigan, supra, the words, "within a reasonable
time" (this being but an expression of what the law would imply),
were inserted in the condition. Twenty-nine years elapsed, and the
court held that it might take judicial notice of the fact that such
period of noncompliance was unreasonable.

The appellant did not offer any evidence to show, or tending to
show, that the lapse was not unreasonable; but the able and learned
counsel for the appellant argues that as at the time of the conveyance
the land was unimproved farm land surely the parties would not have
intended that a city hall should be built until the land became
adapted for that purpose. But there is ' no testimony offered to
show that the land remained unimproved farm land, while it does
appear that at the time of conveyance the land was situate in an
incorporated city, and that shortly thereafter, in 1874, the city pro-
ceeded under legislative authority to improve the land, and those
lands in the vicinity, by opening sewers and streets and by grading
and flagging the latter. It cannot, therefore, be presumed that the
land remained unimproved agricultural land, inasmuch as it was
marked by the improvements which characterize city lots. The court
can take judicial notice of the existence of this municipality in which
the land is situate (Chapman v. Wilber, 6 Hill, 475), and that the
population of that city, according to the census, grew from 1875 to
1892 from 15,587 to 35,745 people, and from 1892 to 1900 from
35,745 to 52,540 people. Mertz v. City of Brooklyn, 11 N. Y. Supp.
778. It may fairly be argued, on the other hand, that the grantor
thought that the building of a city hall or a similar building on the
land would stimulate the development and the growth of the mu-
nicipality, and particularly in the vicinity of the city's capitol.

The learned counsel for the corporation, stating that the learned
special term found that the reasonable time did not exceed 10 years,
contends that it was therefore the duty of the respondents to plead
the breach, and assert the right of re-entry on the lapse of that pe-
riod, and that, inasmuch as they had a right to waive the breach,
their failure to assert the right of re-entry has estopped them be-
tween the end of the 10 years and the time of the beginning of this
suit; and he points out that the local improvements, made shortly
after the conveyance, were ultimately paid for by the city to the
amount of $7,000, and that during the period subsequent to the lapse
of 10 years the land escaped taxation, as the title vested in Long
Island City for public purposes, and thus the defendant was misled
and deprived of a part of its revenues, while, on the other hand, a
reverter now gives the land to the plaintiffs freed from the burden
of taxation from that time. The learned counsel cites this rule from
2 Pom. Eq. Jur. 281, 282:

"Acquiescence, consisting of mere silence, may also operate as a true estoppel in equity to preclude a party from asserting legal title and rights of property, real and personal, and rights of contract. The requisites of such estoppel have already been described. A fraudulent intent to deceive or mislead is not essential. All instances of this class in equity rest upon the principle: 'If one maintain silence when in conscience he ought to speak, equity will debar him from speaking when in conscience he ought to be silent.' A most important application includes all cases where an owner of property stands by, and knowingly permits another person to deal with it as though it were his, or as though he were rightfully dealing with it without interposing an objection," etc.

But the property was not owned by the plaintiffs. It was vested in the defendant in fee, subject to revert upon a breach of the condition subsequent, and if it escaped taxation it owed its immunity to the fact that the grantee was a municipal corporation, not to any act or omission of the plaintiffs subsequent to the conveyance. In Rowell v. Jewett, 71 Me. 408, the grantee paid out money in order to relieve the land from liability therefor, and the court held that the grantee forfeited his estate none the less, saying that the estate reverted to the grantor as a matter of legal right; and if he saw fit to enter for a breach of condition, and to claim a forfeiture, the estate vests in him, to all intents and purposes, without regard to the outlays which the conditional grantee may have made on account of it. Further, the mere breach of the condition did not devest the title. The grantor might not assert his right, which was a mere right in action. Berenbroick v. St. Luke's Hospital, 23 App. Div. 339, 48 N. Y. Supp. 363, appeal dismissed 155 N. Y. 655, 49 N. E. 1093; Ger. Real Estate, 116, 829, 830. No proof of actual entry or demand of possession was necessary before the commencement of the action. Plumb v. Tubbs, 41 N. Y. 442, 450. At most, then, the plaintiff stood silent, and refrained from beginning his action, although the defendant did not build, or begin to build, any public building upon the land. 2 Washb. Real Prop. (5th Ed.) 454, lays down the rule that a forfeiture may be saved, though a condition be broken, by waiver, which may be established by acts as by express agreement. But he also lays down the rule that a mere silent acquiescence in, or parol assent to, an act which has constituted a breach of an express condition in a deed would not amount to a waiver of a right of forfeiture for such breach. In Jackson v. Crysler, 1 Johns. Cas. 125, the court said: "No parol assent or silent acquiescence can destroy, the effect of an express condition contained in a deed." In Gray v. Blanchard, 8 Pick. 284, it was held that a mere indulgence is never to be construed into a waiver of a breach of condition, citing authorities. The breach was not the result of an act, but of inaction. The decisions which have determined a waiver may be discriminated. In Ludlow v. Railroad Co., 12 Barb. 440, the plaintiff for two years after the forfeiture saw the defendant making large expenditures upon the premises, and extending its road so that he knew that his entry would disjoint the line of the defendant. In Cook v. Wardens, etc., of St. Paul's Church, 67 N. Y. 594, the plaintiff permitted the defendant to repair, joined in effecting a sale of a part of the premises, and joined in the use of the premises. In Rose

v. Hawley, supra, the court discuss the lapse of time, but do not pass upon it; while on the second trial (141 N. Y. 366, 378, 36 N. E. 335) the court call attention to the fact that there was an encroachment by a building upon the premises, known to the plaintiff for 20 years.

The judgment also awards $3,330 damages, based upon the rental value of the lands from the time the action was begun until the trial thereof. There can be no question as to the amount of the damages; for it was admitted on the trial that the value of the use and occupation of the premises was $1,600 a year, and the time intervening the beginning of the action and the trial was two years and one month. But the learned counsel for the appellant contends that the award was unsupported by any proof or finding. He insists that no proof was offered to show that the defendant was in possession of the property at the time of trial or for the period covered by the award of damages. It is said that the land was vacant, that no proof was offered to show actual possession, that the complaint simply alleges that the defendant was in possession and that the court so found, and that the mere claim to right of possession—a constructive possession—does not constitute an ouster as against the legal title, and cannot sustain any award of damages. The seventh paragraph of the complaint is "that the defendant, the city of New York, is now in possession of the said premises, or claims to be entitled to the possession thereof, as successor, by virtue of law, of the said Long Island City, the grantee named in the said deed of conveyance." I think that the allegation was thus pleaded in the alternative in order to meet the fact that Long Island City was consolidated with the city of New York. This allegation was not denied, while it was denied that the plaintiff was entitled to the possession as alleged in the eighth paragraph of the complaint. It therefore would seem that the defendant is precluded now from insisting that the plaintiff has been in possession of the land since 1883. The conveyance had vested the defendant with the title, and, until entry or its equivalent, the right of the plaintiffs, based upon a breach of the condition subsequent, is but a right of action, which they might have foregone. (Authorities supra.) It is now well settled that, if the plaintiff in such an action has judgment of title in him, the damages incidental, under his demand for continuing to hold the realty after the bringing of the action to the time of the trial, include the rents and profits or the value of the use and occupation of the land. Clason v. Baldwin, 129 N. Y. 183, 29 N. E. 226; Danziger v. Boyd, 120 N. Y. 628, 24 N. E. 482. The rental value is a fair measure, and the use and occupation is that which the owner might have had if he had remained in possession, and therefore the question is not affected by what actual use and occupation the defendant made or omitted to make. Wallace v. Berdell, 101 N. Y. 13, 16, 3 N. E. 769. It is true that, if the plaintiffs had been in possession of the land for the period taken as the basis for the computation of damages, it must be presumed that the rental value of the land would have been diminished by the public charges thereon, and therefore the damages must suffer such necessary diminution. Wallace v. Berdell, supra.

But the question was not raised at the trial, and could not be, inasmuch as the city held the premises as public lands.

The judgment should be affirmed, with costs.   All concur.